COMMONWEALTH *vs.* CENTRAL BRIDGE CORPORATION.

A provision in the charter of a toll-bridge corporation that the bridge should " at all times be kept in good, safe, and passable repair," requires the company to light the bridge, if the jury find such lighting necessary to make the bridge safe and convenient for passage at night.

An indictment charging that a corporation is bound by law to " keep and main-tain a bridge in such a condition as to render the same safe and convenient for travellers," &c , and that the proprietors of said bridge, " regardless of their

duty in this behalf, negligently and wilfully suffered and permitted said bridge to be, and remain, in such a condition as to render it unsafe and inconvenient for travellers, by neglecting to keep the same properly and suitably lighted in the night time, to the great damage and common nuisance," &c., sufficiently charges a breach of a public duty, without specially alleging that they were bound to light the bridge, the jury having found that such lighting was necessary to the safety of travellers.

THE defendant corporation was convicted of a common nuisance, at the last February term of the court of common pleas, before *Merrick*, J., upon an indictment containing two counts, the nature of which so fully appears in the opinion, that it is not necessary to set them out in full. The case was brought up upon exceptions to the ruling of the presiding judge.

*B. Dean*, for the defendants.

*R. Choate*, (attorney-general,) for the commonwealth.

SHAW, C. J. The defendant corporation is the proprietor of a toll-bridge in the city of Lowell, erected many years ago, when the town of Chelmsford occupied one side of the Merrimac River, and Dracut the other, and this company was incorporated, for building a toll-bridge to connect them. They were indicted for a neglect of public duty, in not keeping the bridge in a safe and convenient condition for travellers by night as well as by day, whereby it became a public nuisance. It is described as a bridge entirely covered by a roof, and the unsafe condition is alleged to arise from their failure to keep the bridge lighted, during the night. Upon trial, the corporation having been found guilty, took exceptions, and the questions arising therein have been brought before this court.

This company was constituted, and their charter and act of incorporation passed, February 24, 1825, by *St.* 1824, *c.* 110: several acts have been since passed in addition, but no one which affects this case. The great question is, whether the defendant corporation is bound to keep this bridge artificially lighted, during the night, provided such lighting is necessary to the safety and convenience of persons passing over it in the night.

The only clause in the act of incorporation, which bears

upon the question, is in section 2 of the original act, and ex-
pressed in these words : " they are authorized to erect a bridge
over Merrimac River, at Bradley's Ferry, so called, between
the towns of Dracut and Chelmsford, and said bridge shall be
well built, of good materials, not less than twenty-eight feet
wide, and well covered with plank or timber, and shall always
keep one sidewalk, with sufficient rails, and shall be boarded
up eighteen inches high from the floor of said bridge, for the
safety of passengers, and said bridge shall at all times be kept
in good, safe, and passable repair."

It is argued, on the part of the defendants, that they are
bound only by the statute; that no duty, of the kind charged,
is imposed on them by any words in this statute, unless it be
to " keep in repair;" and that " repair " means restore, replace,
make good, or reinstate that which has become defective,
through accident or decay. But we think this would be stick-
ing too closely to the letter. We are to take the whole
together, and construe it with reference to the subject-matter,
to which it manifestly relates. A bridge is a structure for
passing over water, and is itself a part of a highway, for all
kinds of travel, which, on account of its heavy expense, is
often built by a company, who are reimbursed by a toll. It
is still, to all intents, a public highway, established for the
same uses, and as such, must be safe and convenient for all
kinds of travel, at all seasons, and at all times of day and
night. All this is substantially implied in the word " bridge,"
as used in this connection, in acts of incorporation. Were
we to adopt the literal construction contended for, the act
would create no obligation on the corporation to maintain
and keep open the bridge, to watch it and guard it, and give
notice of any danger. Nor would it oblige them to keep it
safe and convenient, by being kept free from dangerous ob-
struction. It might be incumbered, if not rendered impassa-
ble, by wood, timber, stone, or other cumbrous articles, and
yet would not be out of " repair" in the literal sense of the
term. If it was originally a covered bridge, then the con-
struction and placing of lamps, or other means of lighting in
the night, was necessary to the " erecting;" and the bridge

was defective without them ; if, being so placed, the company failed to keep them lighted at proper times, it was a failure of duty in maintaining the bridge.

But it is said, that artificial light is not necessary to render a bridge safe and convenient. We understand that this bridge was entirely covered with a tight roof, so as to exclude all the light of the moon and stars; a light which, by a wise provision in the order of nature, is sufficient, unless, perhaps, when the sky is overcast by a very dense thundercloud, to enable persons to travel the highways in the night, with a good degree of safety. But it is urged, that the adoption of this principle would impose on towns the obligation to light all their roads from town to town. If all these roads were covered with roofs, so as to exclude all other sources of light, perhaps such a requisition would not be unreasonable. But we suppose this was an extreme case put in the argument by way of illustration; and it may, perhaps, be properly met by a like extravagant hypothesis.

But to come back to the construction of the act of incorporation, the court are of opinion, that taking the entire act, the defendants were bound to build, maintain, and keep a bridge, being a section of a highway, and it was their duty to keep it in a safe and convenient state and condition to accomplish the purpose for which it was designed. Then, whether light in the night time was necessary to render it safe for all travellers, was a question of fact, and as such, was left to the jury. They were instructed that it was for them to determine, upon all the evidence before them, what was reasonably safe and convenient, for persons passing over the bridge in the night time, and, whether the defendants did so light the bridge, as to make it reasonably safe and convenient for passengers. We think this instruction was right.

Another ground of defence is, that the indictment does not charge the defendants with any indictable offence. We suppose it a perfectly well-settled principle, that neglect of a public duty, by an individual or a corporation, may be prosecuted and punished by indictment, and that this is the proper mode by which the law is to be enforced. That such an of-

21 *

fence is well charged, seems to us clear.  The second count, after setting forth the act of incorporation, the building and use of the bridge, alleges that the defendants were bound " to keep and maintain the same in such a condition, as to render the same safe and convenient for travellers," &c.; that the defendants, "regardless of their duty in this behalf, negligently and wilfully suffered and permitted said bridge to be and remain in such a condition as to render it unsafe and inconvenient for travellers, by neglecting to keep the same properly and suitably lighted in the night time, to the great damage and common nuisance," &c.

If we are right in so construing the act, as to render the defendants liable to the duty of keeping their bridge safe and convenient, and the failure to have it suitably lighted did so render it unsafe, as found by the jury, then such neglect of public duty is established, and the defendants are liable to the penalties therefor.

*Exceptions overruled*; *case remanded for sentence.*